**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Hillstone Restaurant Group Incorporated, | No. CV-22-02004-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Houston's Hot Chicken Incorporated, et al., | |
| Defendants. | |

Before the Court is Plaintiff Hillstone Restaurant Group Inc.'s ("Hillstone") Motion for Contempt and Preliminary Injunction. (Doc. 26.) For the following reasons, the Court denies Plaintiff's Motion for Contempt and grants Plaintiff's Motion for Preliminary Injunction.

## I.    BACKGROUND

### A.    Procedural History

Plaintiff filed a Complaint alleging that Defendants materially breached a trademark settlement agreement (the "Agreement") between the parties and knowingly and willfully infringed Plaintiff's trademarks. (Doc. 1, ¶ 1.) Plaintiff then filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction on the same facts. (Doc. 2.) At a status conference on November 30, 2022, the Court granted Plaintiff's Motion for TRO and a TRO was entered to extend through January 5, 2023. (Docs. 19, 21.) The Court denied Plaintiff's Motion for Preliminary Injunction without prejudice for refiling if necessary. (Doc. 19.) The parties filed a Joint Status Report on Plaintiff's need for a

preliminary injunction (Doc. 22). Plaintiff then filed a Motion for Contempt and Preliminary Injunction. (Doc. 26.) The Motion has been fully briefed and the Court held oral argument on January 4, 2023.

### B.   Factual Background

The Court makes the following factual findings based on Plaintiff's Complaint, the parties' briefing, and the arguments presented at the January 4, 2023 hearing.

Hillstone owns and operates restaurants across the United States, including under the HOUSTON'S service marks. (Doc. 26-1 at 5.) Hillstone has used the HOUSTON'S Mark since 1977, and the United States Patent and Trademark Office ("USPTO") issued Hillstone federal registrations for the HOUSTON'S Mark and related marks in 1979. (*Id.*)

Defendant Houston Crosta founded Houston's Hot Chicken Inc. and its related entities. (*Id.*) Defendants currently have five United States locations, including some that are operated by franchisees. (*Id.*) Defendants and their franchisees have a notable social media presence and have announced that additional restaurant locations will be opened in the near future. (*Id.*) Defendants filed an intent-to-use application to register the HOUSTON'S HOT CHICKEN Mark in connection with restaurant services. (*Id.*) The USPTO rejected Defendants' application, citing a likelihood of confusion with Hillstone's HOUSTON'S Marks. (*Id.*) Defendants abandoned their application on May 18, 2022. (*Id.*)

On May 6, 2022, Hillstone sent Defendants a cease-and-desist letter regarding Defendants' use of HOUSTON'S HOT CHICKEN Marks. On July 25, 2022, Defendants filed an action in Nevada against Hillstone seeking declaratory relief. On September 28, 2022, Plaintiff filed a lawsuit in this Court against one of Defendants' franchisees for trademark infringement. Between August 1 and October 7, 2022, the parties engaged in settlement negotiations. The parties entered into the Agreement on October 7, 2022, requiring that Defendants cease use of the HOUSTON'S HOT CHICKEN Mark in connection with their restaurants by November 10, 2022. On October 13, 2022, both the Nevada and Arizona lawsuits were voluntarily dismissed. At some time after November 10, 2022, Plaintiff sent Defendants a notice of breach of the Agreement and provided

1   Defendants 10 days to cure their breach. Plaintiff then filed this action on November 23,
2   2022.

3   **II.    INJUNCTIVE RELIEF STANDARD**

4          "A preliminary injunction is 'an extraordinary and drastic remedy, one that should
5   not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'"
6   *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012) (quoting *Mazurek v. Armstrong*, 520
7   U.S. 968, 972 (1997) (per curiam)) (emphasis in original); *see also Winter v. Nat. Res. Def.*
8   *Council, Inc.*, 555 U.S. 7, 24 (2008) (citation omitted) ("[a] preliminary injunction is an
9   extraordinary remedy never awarded as of right."). A plaintiff seeking a preliminary
10  injunction must show that (1) he is likely to succeed on the merits, (2) he is likely to suffer
11  irreparable harm without an injunction, (3) the balance of equities tips in his favor, and
12  (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20. "But if a plaintiff can only
13  show that there are 'serious questions going to the merits'—a lesser showing than
14  likelihood of success on the merits—then a preliminary injunction may still issue if the
15  'balance of hardships tips *sharply* in the plaintiff's favor,' and the other two *Winter* factors
16  are satisfied." *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013)
17  (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011))
18  (emphasis in *Shell Offshore*). Under this "serious questions" variant of the *Winter* test,
19  "[t]he elements . . . must be balanced, so that a stronger showing of one element may offset
20  a weaker showing of another." *Lopez*, 680 F.3d at 1072. Regardless of which standard
21  applies, the movant "has the burden of proof on each element of [the] test." *See Envtl.*
22  *Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

23  **III.    ANALYSIS**

24         **A.    Likelihood of Success on the Merits**

25         Plaintiff's Complaint alleges that Defendants materially breached the Agreement,
26  engaged in unfair competition, and infringed Plaintiff's trademark rights by failing to
27  comply with several material terms in the Agreement related to the Defendants' promise
28  to stop using the HOUSTON'S HOT CHICKEN Marks. (Doc. 1, ¶¶ 73-108.) Plaintiff

seeks a favorable judgment, monetary damages, and injunctive relief. (*Id.* at 18-20.) For a preliminary injunction to issue, Plaintiff must show that it has a likelihood of succeeding on its claim for breach of contract. "It is well established that, in an action based on breach of contract, the plaintiff has the burden of proving the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 83 P.3d 1103, 1111 (Ariz. Ct. App. 2004).

Plaintiff asserts that the Agreement is valid and binding because "it was fully negotiated between represented parties and is signed by authorized representatives." (Doc. 26 at 13.) Defendants do not appear to dispute that there is a valid, binding contract in place. (*See* Doc. 26-1 at 5.) Regarding breach of contract, Plaintiff alleges that Defendants are in breach of at least Sections 1(c) and 1(f) of the Agreement by continuing to use the HOUSTON'S HOT CHICKEN Marks on social media, interior signage, wall art, displays and uniforms in the Cerritos, California store, and paper products, including wax paper tray liners, cups, bags, and to-go boxes, at all its locations. (Doc. 26 at 13.) Plaintiff also alleges that Defendants failed to notify their franchisees of the TRO and Agreement. (*Id.*) Plaintiff cites to evidence of Defendants' breach in the form of photographs of signage from the Cerritos store, screen grabs from Defendants' social media pages, and Defendants' purported notices to franchisees that Plaintiff considers inadequate under the terms of the Agreement. (Doc. 26 at 6-8; Doc. 30 at 9). Plaintiff also asserts, as part of its arguments on irreparable harm, that Defendants' alleged breach of the Agreement has caused Plaintiff damages, including that customers will be misled "into believing Defendants' restaurants are operated by, associated or affiliated with, or sponsored or endorsed by Hillstone" and will "cause Hillstone to lose its ability to control the goodwill associated with its HOUSTON'S Mark." (Doc. 26 at 15-16.)

Defendants do not argue that Plaintiff is unlikely to succeed on its breach of contract claim. Instead, Defendants argue that "[a]bsent the Lanham Act claims [for trademark infringement], this Court would have no subject matter jurisdiction over the Settlement Agreement." (Doc. 27 at 13.) Thus, according to Defendants, the proper likelihood of

success analysis would necessarily require an analysis of the likelihood of confusion of the competing marks, which the parties have not briefed. (*Id.*) Defendant relies on *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375 (1994). Plaintiff responds that *Kokkonen* is inapposite, and this Court has supplemental jurisdiction over Plaintiff's state law breach of contract claims. The Court agrees with Plaintiff.

District courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Where a court has original jurisdiction over at least one claim, the court also has "supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Id.* § 1367(a). To determine whether claims form "part of the same case or controversy," the court must evaluate whether the federal claims and state law claims "involve a common nucleus of operative facts." *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195 (9th Cir. 2005) (citation and quotation omitted).

In *Kokkonen*, the parties entered into a settlement agreement on state law claims that were in federal district court pursuant to diversity jurisdiction. 511 U.S. at 376–77. Upon notice of settlement, the district court judge dismissed the case with prejudice. *Id.* Neither the court's dismissal order nor the settlement agreement at issue contemplated that the district court would retain jurisdiction to enforce the settlement agreement. *Id.* at 380–82. Nevertheless, the court entered an order to enforce the settlement agreement after a dispute arose between the parties. *Id.* at 377. On appeal, the Supreme Court held that absent the district court's express retention of jurisdiction to enforce the settlement agreement, "enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.

Defendants do not rely on, nor is the Court independently aware of, any case law requiring a preliminary injunction analysis to focus on the likelihood of success of only claims arising under federal jurisdiction. Although Defendants attempt to rely on *Kokkonen*, that case is distinguishable because the Court has an independent basis for

federal jurisdiction over this case, namely, the federal trademark infringement claims. The Court has inherent authority to exercise supplemental jurisdiction over the pendant state law claims. *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997). Defendants do not dispute that the Court can exercise supplemental jurisdiction over Plaintiff's state law breach of contract claim.[1] Because the Agreement addresses the parties' respective rights and responsibilities related to their use of federally registered trademarks and the trademark infringement claims at issue in the prior lawsuits, the Court finds that the claims "involve a common nucleus of operative facts" such that supplemental jurisdiction over Plaintiff's breach of contract claim is proper. *In re Pegasus Gold Corp.*, 394 F.3d at 1195.

The Court finds that Plaintiff has provided sufficient evidence to establish a likelihood of success on its breach of contract claim, including on Defendants' breaches of the fully executed Agreement and resulting damages. Defendants do not assert any defenses to the existence of a valid contract or Plaintiff's breach of contract claim that require the Court to infer otherwise at this stage.[2]

### B.   Irreparable Harm

To obtain preliminary relief, Plaintiff must show that he is likely to suffer irreparable harm in the absence of an injunction. *Winter*, 555 U.S. at 22. Irreparable harm is "harm for which there is no adequate legal remedy, such as an award for damages." *Brewer*, 757 F.3d at 1068.

Plaintiff argues that irreparable harm is conclusively established because Defendants concede irreparable harm in Section 7 of the Agreement, which provides that "[t]he Parties stipulate that the breach of any material term of this Agreement will cause irreparable harm to the Party not in breach and shall entitle that Party to specific performance or injunctive relief to enforce the Agreement's terms." (Doc. 26 at 15) (quoting Doc. 26-1 at 10). Plaintiff further argues that "Defendants' continuing use of

---

[1] Defendants also do not dispute Plaintiff's assertion that this Court alternatively has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332.

[2] The Court notes, however, that its ruling on likelihood of success is limited to Plaintiff's request for a preliminary injunction. Defendants have yet to answer Plaintiff's Complaint and the Court takes no position on any defenses Defendants might assert in their pleading.

Hillstone's HOUSTON'S Mark in violation of the Agreement is likely to mislead consumers into believing Defendants' restaurants are operated by, associated or affiliated with or sponsored or endorsed by Hillstone." (Doc. 26 at 15-16.) "Such confusion is likely to cause Hillstone to lose its ability to control the goodwill associated with the HOUSTON'S Mark," creating "substantial and irreparable harm." (*Id.* at 16.)[3]

Defendants argue that Plaintiff fails to provide the evidence required to establish irreparable harm, instead relying only on a "blanket, formulaic allegation that HHC's continuing use of Hillstone's HOUSTON'S Mark is *likely to* mislead consumers." (Doc. 27 at 15) (emphasis in original). Defendants further argue that Plaintiff cannot show that it faces ongoing irreparable harm because Defendants have substantially complied with the TRO and continue to address any inadvertent violations. (*Id.* at 15.) Finally, Defendants argue that Plaintiff cannot rely on evidence of irreparable harm to its trademarks because its motion is based on its breach of contract claim.

"Evidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001). Here, Plaintiff plausibly asserts that Defendants' breach of the material terms of the Agreement is damaging to Plaintiff's ability to control its trademarks and associated goodwill that it has been protecting since 1977. Notably, the USPTO rejected Defendants' intent-to-use application for its HOUSTON'S HOT CHICKEN Mark, citing a likelihood of confusion with Hillstone's HOUSTON'S Marks. (Doc. 26-1 at 5.) Instead of arguing against the USPTO's initial conclusion on likelihood of confusion, Defendants abandoned their application. Moreover, although Defendants argue that harm to Plaintiff's trademarks is irrelevant to

---

[3] Plaintiff also asserts that it is entitled to a presumption of irreparable harm under the Lanham Act because Plaintiff is likely to succeed on the merits of its trademark infringement and false designation of origin claims on its motion for preliminary injunction. (*Id.*) The Court notes, however, that Plaintiff's likelihood of success arguments in its motion do not address trademark violations under the Lanham Act, such that the presumption cannot be applied here. *See* 15 U.S.C. § 1116(a) ("A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits for a violation *identified in this subsection* in the case of a motion for a preliminary injunction or temporary restraining order.") (emphasis added).

its breach of contract damages, the Court disagrees because the Agreement contemplates the parties' respective rights and obligations regarding the underlying trademark dispute. (*See* Doc. 26-1 at 5.)

At bottom, Defendants knowingly entered into a valid and enforceable agreement where they specifically stipulated that any material breach on their part would constitute irreparable harm to Plaintiff and would entitle Plaintiff to specific performance or injunctive relief. (Doc. 26-1 at 10.) A preliminary injunction from this Court is necessarily included in the scope of the remedies available to Plaintiff under the Agreement. In addition to the plain terms of the agreement, Plaintiff has also plausibly established that harm to its trademarks and goodwill will result if Defendants are not enjoined from their continuing breaches of the Agreement. Thus, the Court finds that Plaintiff has established that it will suffer irreparable harm in the absence of a preliminary injunction.

## C. Balance of Equities

Plaintiff contends that the balance of equities tips in its favor because "Defendants have consciously chosen to expressly ignore their duties under a valid and enforceable agreement" and "have no legal right to use the HOUSTON'S Mark." (Doc. 26 at 16.) According to Plaintiff, "[p]reliminary injunctive relief will do nothing more than require Defendants to honor the obligations they voluntarily undertook in the Agreement." (*Id.*) If preliminary relief is granted, on the other hand, Defendants argue that it will be unfairly subject to a continual threat of being held in contempt of the preliminary injunction order even though it has taken steps to be in substantial compliance with the Agreement and the TRO. (Doc. 27 at 15.) The Court finds that the balance of equities tips in Plaintiff's favor. Defendants knowingly and freely entered into the Agreement. Their failure to abide by the terms that the parties bargained for continues to cause substantial hardship to Plaintiff, at least because Plaintiff must expend resources to continually monitor Defendants' performance with the Agreement. Moreover, although Defendants complain of the threat of being held in contempt of a preliminary injunction, Defendants assented to the term in the Agreement that their material breach would entitle Plaintiff to "injunctive relief to

enforce the Agreement's terms." (Doc. 26-1 at 10.)

### D.    Public Interest

The public interest factor, unlike the balance of equities, "primarily addresses [the injunction's] impact on non-parties rather than parties." *Sammartano v. First Jud. Dist. Ct.*, 303 F.3d 959, 974 (9th Cir. 2002), *abrogated on other grounds by Winter*, 555 U.S. at 7. Plaintiff argues that the public interest is served by "preventing deception and confusion in the marketplace" and "the enforcement of valid contracts." (Doc. 26 at 16-17.) Defendants argue that an injunction is not in the public interest because the underlying action is for alleged breach of contract between two private parties. (Doc. 27 at 16.) Defendants further argue that Plaintiff's arguments about preventing consumer confusion are inapposite because Plaintiff's trademark infringement claims are not the subject of its motion for preliminary injunction. (*Id.*) Instead, Defendant contends that "the public interest is in allowing the parties to litigate the Lanham Act issues without unfairly causing prejudice to HHC by making a determination of harm in a vacuum before actually litigating the trademark issues." (*Id.*)

The Court finds that this factor tips in favor of Plaintiff because the public interest is served when the courts enforce valid contracts, regardless of whether the dispute underlying the contract has been fully briefed to the court on a motion for preliminary injunction.[4] *Barclay v. Med. Show Land Tr.*, No. CV-12-1060-PHX-SMM, 2014 WL 644558, at *10 (D. Ariz. Feb. 19, 2014) (noting "the public's interest in affording a performing party some remedy against a non-performing party.")

### E.    Scope of the Preliminary Injunction

Based on the parties' positions at the January 4, 2023 oral argument, it does not appear to the Court that there are many outstanding issues remaining before Defendants are in full compliance with the TRO and the Agreement. Plaintiff's motion identifies four outstanding issues: (1) signage at Defendants' Green Valley and Cerritos locations;

---

[4] It is not entirely clear to the Court from Defendants' briefing how the entry of a preliminary injunction would "unfairly caus[e] prejudice" to Defendants' ability to litigate against Plaintiff's trademark infringement claims as this action progresses, or how that affects the Court's analysis of what is in the public interest.

(2) Defendants' social media accounts; (3) inadequate notices to franchisees regarding the Agreement and the TRO; and (4) Defendants' continued use of HOUSTON'S HOT CHICKEN branded paper products and other packaging in each of their restaurants.

First, the Court notes that the parties agreed on the record that all of Defendants' signage at each of their locations now complies with the TRO and the Agreement, such that inclusion of this term in the preliminary injunction may not be necessary. Second, regarding Defendants' social media accounts, Plaintiff has identified multiple outstanding issues remaining before Defendants are in full compliance with the TRO. (Doc. 19 at 1.) Next, Plaintiff asserts that the notices to franchisees that Defendants furnished to Plaintiff (Doc. 30-2) are inadequate because they do not identify the entity names for each franchisee that was purportedly notified of the Agreement and TRO. Plaintiff requests that Defendants supply additional proof that each of Defendants' franchisees have been notified of the Agreement and TRO in a manner that identifies which entity is associated with each franchise.

Finally, the parties dispute whether Defendants' use of paper products branded with the HOUSTON'S HOT CHICKEN Marks is included in the Agreement. In Section 1(c), the Agreement provides:

> By November 10, 2022 . . . , [Defendant] HHC will **permanently cease all use of the HOUSTON'S HOT CHICKEN Marks**, and any other trademarks, service marks, and trade names that include the terms "Houstons", "Houston's", or any confusingly similar term **for restaurant, bar, catering, café, take-out food service, delivery food service, sauces, or any other food or beverage products related to restaurant services** (collectively, the "Goods and Services") and will direct and cause its franchisees to do the same. . . ."

(Doc. 26-1 at 6) (emphasis added). The Agreement further provides:

> For purposes of clarification, **any Goods or Services offered** by [Defendant] HHC **under any trademarks, service marks, or trade names that include the terms "Houstons", "Houston's", or any confusingly similar term** . . . **will not** be

1
2
3

      sold in any restaurants or ***reference any restaurants in any***
***way on any packaging***, labeling, advertising materials,
promotional materials, or marketing materials ***for the Goods***
***and Services***.

4
5
6
7

(*Id.* at 6-7) (emphasis added). Defendants argue that there was not a "meeting of the minds" as to whether Section 1(c) of the Agreement precluded Defendants' use of paper products branded with the HOUSTON'S HOT CHICKEN Marks such that the Agreement is ambiguous on this point. Plaintiff disagrees.

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

   "Under Arizona law, a contract is not ambiguous merely because the parties cannot agree to its meaning; rather, an agreement is ambiguous only if the language can reasonably be construed in more than one sense and the interpretation cannot be determined within the four corners of the instrument." *In re Bataa/Kierland LLC*, 496 B.R. 183, 192 (D. Ariz. 2013) (citing *D. Land Co. v. Killian*, 762 P.2d 124, 126 (Ariz. Ct. App. 1988)). The Court finds that the plain language of Section 1(c) covers Defendants' use of the HOUSTON'S HOT CHICKEN branded paper products and other packaging. Section 1(c) unambiguously prevents Defendants from using any term that includes "Houston's" to identify their restaurants or food services on any of their packaging or advertising materials.[5] *Ash v. Egar*, 541 P.2d 398, 401 (Ariz. Ct. App. 1975) ("Interpretation of a contract is a question of law for the court when its terms are unambiguous on its face."); *see also Chandler Med. Bldg. Partners v. Chandler Dental Grp.*, 855 P.2d 787, 791 (Ariz. Ct. App. 1993). Defendants' arguments to the contrary are without merit and are unsupported by the plain text of the Agreement. *See Farnam Co., Inc. v. Stabar Enters., Inc.*, No. CV 03-503-PHX-NVW, 2005 WL 3369473, at *4 (D. Ariz. Dec. 12, 2005) ("The court [] applies a 'standard of reasonableness' in determining whether language is susceptible to more than one interpretation.") (citing *Gesina v. Gen. Elec. Co.*, 780 P.2d 1380, 1386 (Ariz. Ct. App. 1988)).

26
27

   Thus, the Defendants are in breach of the Agreement through continued use of the

28

---

[5] The Agreement provides that the Defendants' use of marks that include "Houston's TX Hot Chicken" is permitted use. (*See* Doc. 26-1.)

branded paper products. Defendants shall cease the use of any and all paper products and other packaging that incorporate or display the HOUSTON'S HOT CHICKEN Marks, including napkins, cups, tray liners, food boxes, bags, wrappers and any other items used in or sold by Defendants in their restaurants that bear the HOUSTON'S HOT CHICKEN Marks no later than Tuesday, January 10, 2023.

### F.    Bond

Because the *Winter* factors weigh in favor of granting Plaintiff's Motion for Preliminary Injunction, the Court will consider whether a bond is required. Under Federal Rule of Civil Procedure 65(c), a court may grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Although this language appears to be mandatory, "Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). Consistent with that discretion, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* Here, Defendants assert that a bond of $50,000 is appropriate because they stand to incur up to $100,000 in additional costs to comply with the preliminary injunction due to expenditures on paper products to replace the HOUSTON'S HOT CHICKEN branded paper products currently in use. Defendants contend that if they are enjoined from exhausting their current supply of branded paper products and the injunction is ultimately found to be wrongful, Defendants would have incurred those additional costs unnecessarily. The Court agrees with Defendants and finds that a $50,000 bond is appropriate to ensure that Defendants will be able to collect any damages owed if victorious on the merits of Plaintiff's claims.

### G.    Conclusion

Accordingly, Plaintiff's Motion for Preliminary Injunction is granted in part, as set forth herein.

1   **IV.    PLAINTIFF'S MOTION FOR CONTEMPT**

2          Plaintiff asks the Court to hold Defendants in contempt for violating the

3   December 1, 2022 TRO. (Doc. 26 at 10-12.) Plaintiff seeks a coercive sanctions award of

4   $10,000 and an additional $3,000 per day that Defendants fail to comply with the TRO and

5   a compensatory sanctions award encompassing Hillstone's fees and costs incurred because

6   of Defendants' failure to comply. (*Id.*) Plaintiff contends that Defendants violated and

7   continue to violate the TRO by continuing to use HOUSTON'S HOT CHICKEN and

8   related design marks on social media pages, signage, displays, and wall art, including paper

9   products as displays. (*Id.* at 10.) Defendants respond that sanctions are inappropriate both

10  because the TRO fails to comply with Federal Rule of Civil Procedure 65(c) requiring a

11  bond and because Defendants have substantially complied with the requirements of the

12  TRO and are actively addressing any remaining issues. (Doc. 27 at 2.) Although the Court

13  denied Plaintiff's Motion for Contempt on the record at the January 4, 2023 hearing (Doc.

14  36), the Court will briefly expand on the reasons for denial of the motion here.

15         "'The standard for finding a party in civil contempt is well settled: The moving party

16  has the burden of showing by clear and convincing evidence that the contemnors violated

17  a specific and definite order of the court.'" *In re Dyer*, 322 F.3d 1178, 1190–91 (9th Cir.

18  2003) (quoting *In re Bennett*, 298 F.3d 1059, 1069 (9th Cir. 2002)). "The burden then shifts

19  to the contemnors to demonstrate why they were unable to comply," *F.T.C. v. Affordable*

20  *Media*, 179 F.3d 1228, 1239 (9th Cir.1999), and to show "they took every reasonably step

21  to comply," *Stone v. City & Cnty. of San Francisco*, 968 F.2d 850, 856 n.9 (9th Cir. 1992).

22  Upon a finding of contempt, district courts have discretion to award monetary sanctions to

23  the moving party. *See McComb v. Jacksonville*, 336 U.S. 187, 193 (1949) ("We have no

24  doubts concerning the power of the District Court to order respondents, in order to purge

25  themselves of contempt, to pay the damages caused by their violations of the decree."); *see*

26  *also Int'l Union, United Mine Workers v. Bagwell*, 512 U.S. 821, 826–30 (1994)

27  (describing different forms of contempt sanctions, including coercive or punitive detention

28  and civil and criminal fines).

1   Plaintiff has established by clear and convincing evidence that Defendants have

2   failed to comply with the TRO by the December 6, 2022 deadline set forth therein, for the

3   reasons discussed above. Thus, the burden shifts to the Defendants to show that they made

4   reasonable efforts to comply with the TRO and cure their breaches of the Agreement. *See*

5   *Stone*, 968 F.2d at 856 n.9. Defendants argue that they have established substantial

6   compliance with the TRO and are continuing to take additional, reasonable steps to fully

7   comply with the TRO. Specifically, Defendants have demonstrated that they have replaced

8   all of the noncompliant signage in each of their restaurants to remove the prohibited marks,

9   changed the names of each of their entities, provided notices of the changes to at least some

10   of their franchisees, and have deleted thousands of social media posts to remove the

11   prohibited content. (Doc. 27-1, ¶¶ 28-37.) Defendants also aver that their last purchase of

12   HOUSTON'S HOT CHICKEN branded paper products occurred in September 2022 prior

13   to the execution of the Agreement, and they took active steps to order new, compliant paper

14   products beginning on November 30, 2022, after a hearing before this Court. (*Id.*, ¶¶

15   38-43.)

16   The Court does not find any evidence in the record of Defendants' intentional

17   misappropriation of Plaintiff's trademarks or intentional breach the Agreement or TRO.

18   Instead, the Court finds Defendants have demonstrated a sincere, reasonable effort to come

19   into full compliance with the Agreement and TRO such that sanctions are not warranted at

20   this stage.[6] Thus, the Court denies Plaintiff's Motion for Contempt (Doc. 26).

21   ///

22   ///

23

24   _____

[6] Defendants also argue that this Court committed clear error in failing to require Plaintiff
to post a bond in connection with the TRO, such that the TRO is invalid and they should
25   not be held in contempt of it as a result. (Doc. 27 at 16.) Defendants contend that
"[a]lthough a district court retains discretion as to the amount of the security required, if
26   any, the Ninth Circuit makes clear that the district court must consider arguments on the
issue to properly invoke its discretion." (*Id.* at 16-17.) As rightly noted by Plaintiff,
27   Defendants failed to raise their arguments related to imposition of a bond at the TRO
hearing or in their subsequently filed revisions to the proposed TRO. Thus, the Court finds
28   that Defendants' arguments under Rule 65 are waived. The Court retained discretion to
require a bond for the TRO and found that none was required based on the circumstances.

1  **V.      CONCLUSION**

2        For the foregoing reasons,

3        **IT IS ORDERED** granting Plaintiff's Motion for Preliminary Injunction (Doc. 26)

4  in part. Plaintiff shall file an updated proposed preliminary injunction order in accordance

5  with the Court's ruling herein no later than 5:00 PM on Monday, January 9, 2023.

6  Defendant shall file a response and objections to Plaintiff's proposed order no later than

7  5:00 PM on Thursday, January 12, 2023. Plaintiff shall file any reply to Defendant's

8  objections no later than 5:00 PM on Monday, January 16, 2023.

9        **IT IS FURTHER ORDERED** that Defendants shall cease the use of any and all

10  paper products and other packaging that incorporate or display the HOUSTON'S HOT

11  CHICKEN Marks, including napkins, cups, tray liners, food boxes, bags, wrappers and any

12  other items used in or sold by Defendants in their restaurants that bear the HOUSTON'S

13  HOT CHICKEN Marks no later than Tuesday, January 10, 2023.

14        **IT IS FINALLY ORDERED** that Plaintiff shall post a bond at $50,000 with the

15  Clerk of Court no later than Tuesday, January 17, 2023.

16        Dated this 4th day of January, 2023.

17

18

19                                        Michael T. Liburdi

20                                        Michael T. Liburdi
                                          United States District Judge

21

22

23

24

25

26

27

28